IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| Janet Aviles<br>1173 Clydesdale Lane<br>Virginia Beach, VA | | Case No.: 2:16 cv 58 |
| Plaintiff, | | JURY TRIAL DEMANDED |
| vs. | | **First Amended Complaint** |
| BAE Systems Norfolk Ship Repair, Inc.<br>750 W Berkley Ave.<br>Norfolk, VA 23523 | | |
| and | | |
| BAE Systems Ship Repair, Inc.,<br>750 W Berkley Ave.<br>Norfolk, VA 23523 | | |
| Defendants | | |

Parties, Jurisdiction, Venue and Administrative Exhaustion

1.  Plaintiff Janet Aviles brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Americans with Disabilities Act, 42 U.S.C., §§ 12101 et seq. ("the ADA").

2.  Plaintiff Janet Aviles, at all relevant times herein, has been an employee of Defendants.

3.  Defendant Bae Systems Norfolk Ship Repair, Inc. and BAE Systems Ship Repair, Inc., are employers within the meaning of Title VII and the ADA, collectively referred to herein as "Defendant".

4.  The Court has subject matter jurisdiction pursuant to Title VII and the ADA.

5.  Venue is proper in the Eastern District of Virginia because the unlawful practices were

committed here, and defendant are subject to personal jurisdiction and are headquartered in Virginia.

6. Plaintiff filed a charge of discrimination with the EEOC alleging sex discrimination and retaliation in violation of Title VII, and discrimination and retaliation in violation of the ADA.

7. Plaintiff timely filed this Complaint within 90 days of receipt of a notice of right to sue from the EEOC.

8. This First Amended Complaint is filed as a matter of course pursuant to Fed.R.Civ.P. 15(a)(1)(B) 21 days after the service of a motion pursuant to Rule 12(b).

Facts

9. Janet Aviles became employed at defendant in 1987. In 2000 Ms. Aviles began working as a Ship Fitter, in the Plate Shop. Since prior to 2007, due to injuries, she has been unable to work on ships (which involves climbing ladders and working in confined spaces).

10. Ms. Aviles is disabled within the meaning of the ADA. Defendant perceived or regarded Ms. Aviles as having disabilities.

11. She is able to perform the essential functions of her job, with reasonable accommodations.

12. Since she has been unable to work on ships, she has worked as a Ship Fitter in the Prefab Shop, where relatively small structures are fitted and welded.

13. Many of the skilled trades persons, who work in the Prefab Shop, are unable to work on ships, because of their disabilities.

14. Work spaces in the Prefab Shop frequently have stools or chairs. They are separated so that trades persons requiring accommodations can work safely. Other accommodations were and are provided to trades persons, which allow them to perform the essential functions of their jobs, in the Prefab Shop.

15. Ms. Aviles has never injured herself or anyone else while working in the Prefab Shop.

16. Her work as a fitter has always been at least satisfactory. Ms. Aviles was promoted from First Class Helper, the rank at which she started in the Plate Shop, through the ranks of Third, Second, First Class Handy Person, Third, Second First Class Mechanic, and finally in October 2012, Specialist, the highest non-supervisory position available to production workers at defendant.

17. Ms. Aviles has been a vocal advocate for women's rights at BAE. She has filed dozens of grievances through her union, for herself, and in her role as Steward, for other women, complaining of disparities in the treatment of women. In 2008 she filed a charge of discrimination with the EEOC, which alleged that she and other women were denied promotion because of their sex, and that she had been denied training and overtime, because of her sex, and sexually harassed. In 2011 the EEOC found reasonable cause to believe that defendant engaged in sex discrimination. Defendant entered into a conciliation agreement with Ms. Aviles in which it agreed to the relief she was seeking.

18. In October 2012, Ms. Aviles filed a second Charge of Discrimination against defendant, along with Stephanie Jackson, Jameika Brown and Kel Sharpe.

19. In July 2013 Ms. Aviles, as lead plaintiff, along with Jackson, Brown and Sharpe (the "Class Plaintiffs"), brought a class action complaint against defendants, alleging a pattern or practice of sexual harassment and discrimination in pay and promotion, against women, and retaliation for protected activity.

20. On February 11, 2015 Joshua Friedman, one of Class Plaintiff's attorneys, received an email from Carson Sullivan, one of defendant's attorneys, which stated in pertinent part:

> Josh, I am attaching a letter from Janet's treating physician, which the Company received late this afternoon through its worker's compensation attorney. In light of this letter, we cannot allow Janet to continue to work . . . .

21. The letter, dated February 9, 2015, from Lawrence Morales, MD to defendant's Workers Compensation attorney, Robert Rapaport, was merely a review of records. Morales had not examined Ms. Aviles. He had no knowledge, personal or otherwise, whether she was able to do her job.

3

Nonetheless, he concluded that:

> It is clear that the combination of injuries to her hands, right knee and back sustained by Ms. Aviles over the years clearly prevents her from performing the essential job functions of a First Class Shipfitter. . . . Ms. Aviles should not continue work within the Shipyard which creates an environment potentially hazardous to herself, given her restrictions, as well as to others.

22. According to Ms Sullivan, Dr. Morales and BAE's workers compensation attorney, Robert Rapaport, were in contact about the subject of the letter, prior to February 9, 2015.

23. After the letter, Plaintiff became suspicious that BAE had caused Dr. Morales to issue the letter and decided to exclude her from the Shipyard, because of her protected activity. Plaintiff is unaware of another instance in which defendant and/or a doctor have involuntarily caused a production worker, who had been satisfactorily performing her job, to leave work and receive workers compensation benefits. When a worker goes on workers compensation, the employer incurs expenses such as the workers medical expenses and higher workers compensation premiums.

24. The letter did not state that Dr. Morales had examined Ms. Aviles. In fact, he had not. Although he was identified by Worker Compensation records as her treating physician, he had not treated her for two years.

25. Prior to sending his letter, Dr. Morales did not ask Ms. Aviles whether she was able to perform her job duties or whether she wished to continue working.

26. No determination was made by defendant about the nature, duration, and severity of the risk allegedly posed by Ms. Aviles; the probability that the potential injury she allegedly presented would actually occur; and whether reasonable modifications of policies, practices, or procedures would mitigate the risk.

27. After the letter from Dr. Morales was received, through her counsel, and through other

means, Ms. Aviles repeatedly demanded that BAE allow her back to work, with the same reasonable accommodations which had allowed her to perform the essential functions of her job satisfactorily.

28. Ms. Aviles visited Dr. Samuel P. Robinson, the Orthopedist who was actively treating her, on February 16, 2015. He examined her. He filled out an Injury Status Report, in which he found her fit to return to shop work at defendant immediately. He asked that she be allowed to sit in a chair at work as needed (which she already was), and "ice/heat as needed." The Report was faxed to Shirley Bowling, the designated Workers Compensation contact at BAE.

29. Ms. Sullivan stated that there was nothing out of the ordinary about the contact between Dr. Morales and Dr. Sullivan, and that it was customary for workers compensation attorneys and doctors to speak to each other, without opposing counsel present. She denied that BAE had a retaliatory motive in excluding Plaintiff from the Shipyard. She said that BAE could not rely on the Injury Status Report submitted by Dr. Robinson, but that it would be willing to accept the opinion of a qualified doctor that Plaintiff could safely work. Mr. Friedman pointed out that would mean that Ms. Aviles would return to work, and that her client needed to be prepared for that result, which Ms. Sullivan acknowledged.

30. On March 13, 2015, Ms. Sullivan stated that:

BAE is not required to pay for a second opinion in this situation. However, the Company is willing to do so here in order to show you that your allegations are baseless and to try in good faith to avoid burdening the Court with a frivolous motion. We will need to ensure that all relevant medical records and other documents are provided and that the physician's specialty and qualifications are appropriate. Please let me know your position.

31. Mr. Friedman accepted Ms. Sullivan's representations that BAE was not acting in bad faith or on account of Ms. Aviles' protected activity and her representation that should the agreed doctor opine that Ms. Aviles could work safely, she would be allowed to return to work.

32. The parties engaged in negotiations over the correct job description and restrictions to be

provided to the physician, for the second opinion.

33. Dr. Steven Gershon was selected for the second opinion. Through her Workers Compensation counsel, Ms. Aviles provided Dr. Gershon a description of her job duties, and the restrictions imposed by her treating physicians.

34. After examination, and review of pertinent medical records, Dr. Gershon stated "I agree that Ms. Janet Aviles can safely perform the job listed . . . given her current medical condition and believe that this job is within her work restrictions." He signed his opinion April 22, 2015.

35 On May 12, Plaintiff received a copy of a phone message which Mr. Rapaport had left for Dr. Gershon, and his response. The message (from May 6) stated that:

> Mr. Rappaport says he is getting conflicting information regarding Ms. Aviles RTW status. Says that Dr. Morales said that she should not return to work, Dr. Robinson saw her for her knees and said she could return to work with accommodations: a chair with a back and foot elevation. He asks that you please clarify your position with regard to her restrictions and do you recommend that she return to work and is it safe for her to do so?

36. On May 12, Dr. Gershon responded by faxing to BAE's workers compensation contact, a return to work form, which stated: "return to modified work, . . . continued from previous, . . . no lifting greater than or equal to 50 lbs, no crawling, no climbing ladders, no squatting, utilize heat/ice as needed."

37. On May 18, 2015, Ms. Aviles and her counsel reasonably believed, based on the written and verbal representations of BAE's counsel that BAE was engaged in a good-faith process, that would result in Plaintiff's return to work, because the doctor mutually agreed upon by BAE and Plaintiff had provided an opinion she could safely return to work, based on her actual job duties and restrictions.

38. On May 21, 2015, through its Worker's Compensation counsel, defendant stated in a letter to Ms. Aviles' Worker's Compensation counsel that it would:

appreciate your advising our office as to what restrictions Ms. Aviles is willing to do without. Obviously, these would have to be addressed by her treating physicians to determine whether it is reasonable to remove these restrictions, and, if it is reasonable to remove these restrictions, why they were put into effect in the first place. It does not appear that Ms. Aviles can work safely in the shipyard environment . . . Her numerous restrictions are inconsistent with a safe working environment.

39. This letter constituted a 180 degree reversal of the process and agreement reached between Ms. Sullivan and Mr. Friedman. Rapaport was asking what accommodations Ms. Aviles could do without, and claimed—contrary to the opinion of Dr. Gershon, on which they had agreed to rely—that "[h]er numerous restrictions are inconsistent with a safe working environment." He also stated that her "treating physicians," which included Dr. Morales, would have to agree that she could safely return to work with fewer restrictions than she required.

40. On June 15, 2015, Dr. Morales submitted a Workers' Compensation Injury Report stating that Ms. Aviles was not fit for duty.

41. Nonetheless, in a further attempt to get Ms. Aviles back to work, on or about July 16, 2015, Ms. Aviles's Worker's Compensation counsel visited Dr. Morales. He told her that Ms. Aviles was incapable of being a productive member of the workforce, with any accommodations. When counsel stated that Ms. Aviles was working until he wrote the letter stating that she could not, he responded that she was seeing so many doctors that "she could not really have been working."

42. Subsequently, on July 22, 2015, Dr. Morales released Plaintiff from his care for any and all work injuries.

43. On July 24, 2015, Dr. Gershon submitted to BAE a Workers' Compensation Injury Status Report indicating Plaintiff could return to modified work with restrictions, which restrictions BAE had previously accommodated.

44. BAE refused to allow Plaintiff to return to work.

45. Plaintiff remains out of work.

7

46.   One of Ms. Aviles's former coworkers [NAME WITHHELD TO ABIDE BY HIPAA AND PROTECT HIS PRIVACY] has disabilities similar to Ms. Aviles.' He is no more a danger to himself, or others, than Ms. Aviles is. He worked with her in the Prefab Shop as a welder.

47.   On information and belief, defendant has provided this individual with reasonable accommodations, which allow him to do the essential functions of his job.

48.   On information and belief, there are other production workers, who have disabilities similar to Ms. Aviles', who are no more a danger to themselves, or others, than Ms. Aviles is, who work in the Prefab Shop. On information and belief, none of these other production workers brought a gender discrimination class action against defendant.

49.   Ms. Aviles has been damaged by Defendant's conduct.

## Count I

### Disability Discrimination in Violation of the ADA

50.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

51.   The second opinion agreed upon by the parties was part of the interactive process intended to determine whether Ms. Aviles was able to perform the core functions of her job with accommodations.

52.   By violating the agreement to act in good faith, by failing to abide by the opinion of the doctor it had agreed to, upon the terms it had agreed to, Defendant failed to engage in good faith in the ADA's interactive process.

53.   Defendant refused to allow her to return to work in violation of the ADA.

54.   Defendant proximately caused Plaintiff's damages.

## Count II

<u>Retaliation in Violation of the ADA</u>

55. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

56. Ms. Aviles engaged in protected activity by demanding to be reinstated, and attempting to carry out an interactive process, in good faith.

57. Defendant refused to allow her to return to work because of her protected activity.

58. Defendant proximately caused Plaintiff's damages.

<u>Count III</u>

<u>Sex Discrimination in Violation of Title VII</u>

59. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

60. Defendant provided accommodations to Ms. Aviles's coworker, which enabled him to do the essential functions of his job.

61. On information and belief, Defendant provided accommodations to other men who were similarly situation to Ms. Aviles, which enabled them to do the essential functions of their jobs.

62. Defendant refused to provide the accommodations to Ms. Aviles because of her sex, and refused to allow her to return to work.

63. Defendant proximately caused Plaintiff's damages.

<u>Count IV</u>

<u>Retaliation in Violation of Title VII</u>

64. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

65. Ms. Aviles engaged in numerous instances of protected activity under Title VII, up to and including signing a Settlement Agreement on May 18, 2015 in connection with the class action lawsuit in which Ms. Aviles was a named Plaintiff, and thereafter, by advocating for her return to

work.

66. Because of her protected activity, BAE engaged in adverse action by continuing to exclude her from work, resulting in loss of pay, inability to obtain promotions, and concomitant improvements in pay and benefits, loss of the automatic renewal of her certificates of qualification to perform her trade, and loss of her position as a union steward, which had allowed her to advocate for the class, after receiving Dr. Gershon's opinion.

67. After May 21, Mr. Friedman concluded that BAE had acted to exclude Plaintiff from the Shipyard because of her protected activity, and that its willingness to reinstate her based on Dr. Gershon's opinion had been a charade, intended to conceal its motive.

68. Defendant proximately caused Plaintiff's damages.

## Trial By Jury

Ms. Aviles demands trial by jury on all of her claims which may be tried to a jury.

WHEREFORE, Ms. Aviles asks for a judgment:

a. Reinstating her to her position as a Specialist Ship Fitter, in the Prefab Shop, with back pay and lost benefits, including nunc pro tunc, such seniority and call back rights as she possessed on February 11, 2015;

b. A declaration that defendants have engaged in unlawful discrimination and retaliation;

c. Compensatory damages;

d. Punitive damages;

e. Reasonable attorney's fees and expenses;

f. Such other legal and equitable relief which may be just and proper.

Dated: July 5, 2016

Respectfully submitted,

By: <u>/s/ James H. Shoemaker, Jr.</u>
James H. Shoemaker, Jr., VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4500
Facsimile: (757) 223-4518

By: _____
    Joshua Friedman
    Rebecca Houlding
Law Offices of Joshua Friedman
1050 Seven Oaks Lane
Mamaroneck, NY 10549
Tel (212) 308-4338 x 5
Fax (866) 731-5553
rebecca@joshuafriedmanesq.com
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 5, 2016 I will electronically file the foregoing Amended Complaint using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

      By: /s/ James H. Shoemaker, Jr.
      James H. Shoemaker, Jr.
Virginia State Bar No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone:  (757) 223-4500
Fax:  (757) 223-4518
jshoemaker@phwd.com

*Local Counsel for Plaintiffs*