## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NEWPORT NEWS DIVISION

---

| | |
|---|---|
| **JANET AVILES,** | |
| **Plaintiff,** | |
| **vs.** | **Case No.: 2:16-cv-00058-AWA-RJK** |
| **BAE SYSTEMS NORFOLK SHIP REPAIR, INC.** and **BAE SYSTEMS SHIP REPAIR, INC.** | |
| **Defendant**s | |

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## <u>TO DISMISS OR FOR A MORE DEFINITE STATEMENT</u>

### INTRODUCTION

Plaintiff alleges that: Ms Aviles reasonably suspected she had been excluded and put on Workers' Compensation because of her leadership of a gender class action. First Am. Compl. paras. 9-26, ECF No. 19 ("Am. Compl."). Plaintiff demanded she be returned to work because she was able to perform the core duties of her job, notwithstanding her disabilities. *Id*. at para. 27. Plaintiff reasonably believed she would be returned to work when Defendant was satisfied she could do her job with the previous accommodations. *Id*. at paras. 28-33. Through May 18, 2015, Plaintiff continued to believe she had not been fired, and that she would be allowed to go back to work. *Id*. at paras. 33-37. By July 16, 2015, Plaintiff had reason to believe she was not going to be allowed back to work, no matter how able she was to perform her duties. *Id*. at paras. 38-41. Plaintiff is being treated worse than a male comparator in the prefab shop, and comparators who have not complained about disability discrimination or led a gender class action. *Id*. at paras. 46-48.

Based on these allegations, Count I alleges that BAE failed to engage in the interactive process in good faith; Count II alleges that BAE retaliated against Plaintiff for asserting her ADA rights in requesting to be returned to work; Count III alleges that BAE engaged in sex discrimination by allowing a male with comparable disabilities doing the same job to work; and Count IV alleges that BAE took Plaintiff out of work for pretextual reasons, falsely promised her she would be able to return when she was cleared by an agreed doctor, and then ignored his recommendation, revealing that its entire course of conduct had been retaliatory.

BAE brands these pleadings "so vague or ambiguous that [BAE] cannot reasonably prepare a response," citing the Federal Rules of Civil Procedure 12(e) ("Rules"). Def.'s Mem. of Law in Supp. of Mot. to Dismiss 25, ECF No. 23 ("Def.'s Mem. of Law").

However, BAE plainly understands the allegations, it just wants them changed. That is apparent from the way BAE mischaracterizes the Amended Complaint. It creates from whole cloth a contrary version of the facts. On a Rule 12(b)(6) motion to dismiss, Plaintiff's allegations are to be accepted as true and viewed in the light most favorable to Plaintiff. *Fitzsimmons v. Cardiology Assocs. of Fredericksburg*, Civil Action No. 3:15cv72, 2015 U.S. Dist. LEXIS 108925, at *3 (E.D. Va. Aug. 18, 2015). A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* Defendant, throughout its Memorandum of Law, tramples on the rules of construction applicable in a Rule 12(b)(6) motion, consistently misstating the language and meaning of the Amended Complaint, and failing to give the Plaintiff reasonable inferences in her favor.

For example, to bolster, improperly, the credibility of Dr. Morales' letter to BAE's attorney stating that Plaintiff was "hazardous to herself . . . as well as to others," Am. Compl. para. 21, BAE refers to him as "*her own treating physician.*" Def.'s Mem. of Law 2 (italics in original). However, the Amended Complaint alleges that "Dr. Samuel P. Robinson, [was] the Orthopedist who was actively treating her," Am. Compl. para. 28, and that Dr. Morales "had not treated her for two years." *Id.* at para.

2

24.

It is simply not possible for BAE to obtain dismissal if it follows the rules of construction because it would have to acknowledge that the pleading implies that there was no legitimate reason for Dr. Morales to write the letter, *Id.* at paras. 21, 24, and that Rapaport's contact with Morales, prior to the letter, *id.* at para. 22, implies that BAE actually sought the letter, to create a pretext for what it would later do.

Likewise, the Amended Complaint alleges at paragraph 26:

No determination was made by defendant about the nature, duration, and severity of the risk allegedly posed by Ms. Aviles; the probability that the potential injury she allegedly presented would actually occur; and whether reasonable modifications of policies, practices, or procedures would mitigate the risk.

Rather than addressing Plaintiff's allegation, and the obvious inference to be drawn in Plaintiff's favor, BAE simply states its own, contrary, version of the facts: "Dr. Lawrence Morales, determined that she was no longer able to work safely in the shipyard." Def.'s Mem. of Law 4.

BAE claims it had "no choice but to remove Plaintiff from the shipyard." *Id*. at 2. Yet, as Plaintiff alleges at paragraph 26, "[n]o determination was made by defendant about the nature, duration, and severity of the risk allegedly posed by Ms. Aviles. . . ." Defendant cannot simply conclude for the Court that its motives were lawful in a Rule 12(b)(6) motion. Plaintiff may introduce evidence at trial that BAE wanted to terminate Plaintiff because of her protected activity or protected status.

Defendant then argues that any "alleged discrimination, failure to accommodate or retaliation" concomitant to its decision to remove Plaintiff from work occurred "*before*" Plaintiff executed the Release. Def.'s Mem. of Law 2 (emphasis in original).

While the Settlement Agreement ("SA"), and Release are plainly not integral to the Amended Complaint, the SA states at paragraph 46:

3

> No retaliation.  There will be an additional level of scrutiny if management proposes to terminate or demote any named Plaintiff or former named Plaintiff during the term of this Agreement.

It is difficult to square the SA's "No Retaliation" provision with BAE's contention that Plaintiff knew or should have known when she signed the Release that her removal from work was retaliatory and/or permanent.

Defendant cites to Plaintiff's Amended Complaint, arguing "[b]ased on Dr. Morales' opinion, BAE Systems removed Plaintiff from work on or about February 11, 2015." Def.'s Mem. of Law 5 (citing Am. Compl. para. 20). However, Plaintiff does not allege that BAE removed her from work "based on" Dr. Morales' opinion in Paragraph 20, or anywhere else in her Amended Complaint. Quite the contrary, the crux of Plaintiff's Amended Complaint is that Defendant acted based on discriminatory and retaliatory motives.

As alleged in the Amended Complaint at paragraph 37, "[o]n May 18, 2015, Ms. Aviles and her counsel reasonably believed, based on the written and verbal representations of BAE's counsel that BAE was engaged in a good-faith process, that would result in Plaintiff's return to work, because the doctor mutually agreed upon by BAE and Plaintiff had provided an opinion she could safely return to work, based on her actual job duties and restrictions."[1] The reasonable inference, to which Plaintiff is entitled, is that her retaliatory termination claims accrued after she signed the SA and Release, and therefore could not have been waived.

**ARGUMENT**

In assessing the merits of a Rule 12(b)(6) motion a district court "'must accept as true all of the

---

1 BAE attempts to cast aspersions against Plaintiff and/or her counsel by arguing that Plaintiff's counsel "conveniently" changed his mind about BAE's good faith efforts to engage in the interactive process to get Plaintiff back to work. Def.'s Mem. of Law 11. Counsel did not pick that date out of thin air: it was the date on which BAE, instead of putting Plaintiff back to work because the neutral doctor whose opinion it had agreed to accept, requested additional information as to what accommodations Plaintiff could do without, demonstrating that it was not acting in good faith. Am. Compl. para. 38.

factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Pro-Concepts, LLC v. Resh*, Civil Action No. 2:12cv573, 2014 U.S. Dist. LEXIS 18416, at *7-9 (E.D. Va. Feb. 11, 2014), *quoting Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (additional quotation omitted).

The factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A complaint need plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

An employment discrimination complaint need not plead a *prima facie* case, or "specific facts beyond those necessary to state [her] claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.[2]

When a "Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, [courts] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv*., 840 F.2d 1149, 1152 (4th Cir. 1988) (internal quotations omitted).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; . . . it does not

---

2  (citing *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 508 (2002); *see also Bass v. E. I. DuPont de Nemours & Co*., 324 F.3d 761, 764 (4th Cir. 2003) ("This Court has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.") (citing *Swierkiewicz,* 534 U.S. at 511).

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Fletcher v. Philip Morris USA Inc.*, No. 3:09CV284, 2009 U.S. Dist. LEXIS 63094, at *11 (E.D. Va. July 13, 2009).

"An affirmative defense, such as release, is not ordinarily considered on a motion to dismiss because the plaintiff is not required to negate it in the complaint[, and] . . . such a motion should be granted only in the rare circumstances where facts sufficient to rule on an affirmative defense clearly appear on the face of the complaint." *Alexander v. UIP Prop. Mgmt.*, Civil Action No. DKC 14-2469, 2015 U.S. Dist. LEXIS 39982, at *5-7 (D. Md. Mar. 30, 2015).

It is familiar law that discrimination claims which have not accrued, cannot be waived: "[F]ederal antidiscrimination rights may not be prospectively waived." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009). Such claims accrue when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'"[3] *Guerrero v. Weeks*, No. 1:13cv837(JCC/JFA), 2013 U.S. Dist. LEXIS 132122, at *7 (E.D. Va. Sep. 16, 2013) (quoting *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995).

---

3  Without citation or analysis, Defendant argues: "By the time of the May 18, 2015 Release, those claims—the claims pled in the Amended Complaint—had accrued and were released." Def.'s Mem. of Law 11. BAE does not analyze a single case discussing when claims accrue, save for one 10th Circuit case, in the summary judgment context, which is not on point. *See Mata v. Anderson,* 635 F.3d 1250, 1253 (10th Cir. 2011). In *Mata,* defendant filed a criminal complaint against plaintiff in February 2005. Plaintiff settled with defendant on an unrelated claim in November 2005, agreeing to waive "any and all claims." *Id.* at 1251. Plaintiff was acquitted of defendant's complaint in July 2006. Plaintiff filed a First Amendment retaliatory-prosecution claim against defendant in 2009. Plaintiff argued, *inter alia,* that the malicious prosecution claim did not accrue until he was acquitted, which post-dated the prior settlement, and was therefore not barred by a release. *Id.* at 1252. The court held that because a First Amendment retaliatory-prosecution claim does not require "favorable termination of the underlying action" as an element the claim, the claim accrued when the plaintiff "knew or had reason to know of the alleged retaliatory prosecution, not when the case was dismissed. *Id.* at 1253. Because the court found the plaintiff's claims accrued before the settlement agreement, it held the claims were barred. *Id.* at 1252-53. *Mata's* analysis and arguments concerning waiver of claims are inapplicable to the present case. The *Mata C*ourt looked to the specific elements of proof for a retaliatory prosecution claim to determine when the claims accrued, which is inapplicable to the accrual analysis of the present ADA and Title VII claims that Plaintiff alleges here.

## POINT I

### PLAINTIFF IS NOT LIMITED TO CITING OR
### RELYING ON EVENTS SUBSEQUENT TO MAY 18, 2015

BAE insists that Plaintiff be limited to pleading her claims using only facts which occurred after the Release was signed. *See* Def.'s Mem. of Law Pt. II (C) ("Plaintiff Does Not Allege Sufficient Facts to Support a Plausible Claim for Relief Based on Events that Occurred After the Release."). This makes no sense. While Plaintiff can only succeed with claims that were not extinguished by the Release, she is the master of her complaint, and if facts prior to the Release are relevant to her claims, she may plead them and this Court may consider them.

In *Aviles v. BAE Sys. Norfolk Ship Repair*, Civil Action No. 2:13cv418, 2014 U.S. Dist. LEXIS 185300 (E.D. Va. June 9, 2014), Ms Aviles and three other named Plaintiffs brought claims on behalf of a class of women subjected to gender discrimination. BAE took a similar approach, objecting to the pleading of facts which it claimed were only relevant to a time-barred claim. As this Court explained:

> Even if Named Plaintiffs cannot state claims for discriminatory hiring, their allegations that they were subject to discriminatory hiring are relevant to their discriminatory pay claims. Specifically, it is possible that Defendants will respond to Named Plaintiffs' discriminatory pay claims by arguing that Plaintiffs' pay is based on gender-neutral pay scales. See Am. Compl. para. 27 (discussing these scales). Named Plaintiffs' discriminatory hiring allegations help to rebut this argument by asserting that women are placed at lower ranks on these scales than equally qualified men, resulting in women receiving lower pay despite the facial neutrality of the pay system. Because Named Plaintiffs' discriminatory hiring allegations provide useful background evidence for Plaintiffs' discriminatory pay claims, those allegations are properly included in the Amended Complaint.

2014 U.S. Dist. LEXIS 185300, at *16-17.

The same reasoning is equally applicable to the instant claims. BAE will deny that it acted for retaliatory or discriminatory reasons. Ms. Aviles alleges that she had been doing her job with certain accommodations until BAE refused to allow her to work in February 2015, prior to the Release. Am. Compl. paras. 11-16, 20-21. On May 21, 2015, after the Release was signed, BAE, through its attorney,

refused to allow her to return to her job, with the same accommodations. *Id*. at para. 38. In the context of BAE's agreement, to honor Dr. Gershon's opinion, which he initially provided April 22, 2015, stating it was not hazardous for Ms. Aviles to return to work with the same accommodations, *Id*. at para. 34, all of these pre-Release facts would create an inference of retaliatory, or discriminatory intent, communicated by BAE's attorney on May 21, *never* to allow Plaintiff to return to work. "[D]iscriminatory events that do not provide bases for relief 'may still constitute relevant background evidence for valid claims.'" *Aviles v. BAE Sys.,* 2014 U.S. Dist. LEXIS 185300, at *11.[4]

In addition, BAE is not permitted on a Rule 12(b)(6) motion to insist that this Court use an affirmative defense, the Release, as a lens to evaluate the viability of Plaintiff's pleading. "An affirmative defense, such as release, is not ordinarily considered on a motion to dismiss because the plaintiff is not required to negate it in the complaint[, and] . . . such a motion should be granted only in the rare circumstances where facts sufficient to rule on an affirmative defense clearly appear on the face of the complaint."[5] The Release is not even mentioned in the Amended Complaint.

Since the Release is not mentioned in the Amended Complaint, *ipso facto,* it is not integral to the Amended Complaint. The case law is clear that even if the extrinsic document is of public record, on a Rule 12(b)(6) motion, it is improper for the movant to rely on the document unless it is integral to

---

4    Quoting *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996).

5    *Alexander v. UIP Prop. Mgmt.*, Civil Action No. DKC 14-2469, 2015 U.S. Dist. LEXIS 39982, at *5-7 (D. Md. Mar. 30, 2015). (citing *Goodman v. PraxAir, Inc*., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *see also Long v. Nationstar Mortg. LLC,* No. 2:15-cv-01202, 2016 U.S. Dist. LEXIS 40171, at *12 (S.D. W. Va. Mar. 28, 2016) ("While it may be proper in rare circumstances to consider the merits of an affirmative defense at the motion to dismiss stage, the Court wades into this territory with caution."). Moreover, "a movant cannot merely show that the elements of the defense appear on the face of the complaint or in properly considered documents, but must also 'show that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint.'" *Alexander*, 2015 U.S. Dist. LEXIS 39982, at *5-7 (quoting *Goodman*, 494 F.3d at 464). Defendant has wholly failed, or even attempted, to foreclose any potential of Plaintiff's rejoinder of Defendant's affirmative defense. *Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 681-82 (E.D. Va. 2014) (denying defendant's motion to dismiss because defendant did not foreclose plaintiff's potential rejoinder the affirmative defense on which defendant's motion rested).

the complaint. *Am. Chiropractic v. Trigon Healthcare,* 367 F.3d 212, 234 (4th Cir. 2004) ("The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'") (citation omitted).

Plaintiff has properly relied on facts prior to the Release in demonstrating that her claims should not be dismissed.

**POINT II**

**PLAINTIFF'S ADA CLAIM ACCRUED AFTER MAY 18, 2015**

Under the Americans with Disabilities Act ("ADA"), an employer's failure to make a reasonable accommodation for a disabled employee is a form of unlawful discrimination. *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322 (4th Cir. 2011) (citing 42 U.S.C.A. § 12112(b)(5)). "Implicit . . . is the ADA's requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atl. Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005) (unpublished). A disabled employee has a failure to accommodate claim where an employer fails to engage in the interactive process, which prevents the identification of an appropriate accommodation. *See Crabill*, 423 F. App'x at 323.

Both parties have a duty to engage in the interactive process in good faith. *See Haneke,* 131 F. App'x at 400.

> [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith . . . In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Crabill*, 423 F. App'x at 323 (quoting *Beck v. Univ. of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135-36 (7th Cir. 1996)).

"[L]iability for failure to engage in an interactive process depends on a finding that, had a good

9

faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Johansson v. Prince George's Cty. Pub. Schs*, Civil Action No. DKC 13-2171, 2014 U.S. Dist. LEXIS 91667, at *29 (D. Md. July 7, 2014) (quoting *Wilson v. Dollar Gen. Corp*., 717 F.3d 337, 347 (4th Cir. 2013)). Where a plaintiff has "sufficiently pled a failure to accommodate claim under the ADA, . . . issues concerning the reasonableness of the requested accommodation are questions of fact that are more properly resolved at the summary judgment stage or at trial." *Feldman v. Law Enf't Assocs. Corp*., 779 F. Supp. 2d 472, 487 (E.D.N.C. 2011).

A denial of a request for a reasonable accommodation is a discrete discriminatory act, which accrues when an employee learns that an employer will not make a reasonable accommodation. *Faircloth v. Goodyear Tire & Rubber Co.*, No. 5:13-CV-336-BO, 2013 U.S. Dist. LEXIS 172745, at *5, 8 (E.D.N.C. Dec. 9, 2013) (denying defendant's motion to dismiss argument that plaintiff's claims were time barred because "the discrete discriminatory act took place on the day plaintiff became aware that . . . no accommodation would be made[,]" not the day in which plaintiff was placed on medical leave, as the defendant argued).

Plaintiff alleges that the interactive process began in March 2015, Am. Compl. para. 30, with what she believed was a good faith agreement to seek the opinion of a mutually agreed second physician to determine whether Plaintiff was able to do the core functions of her job pursuant to mutually agreed duties and restrictions. BAE began acting in bad faith by Rappaport's May 21, 2015 letter. *Id*. at para. 38. Rapaport did not say "never," but he introduced conditions which effectively precluded her return. *Id.* (Defendant would "appreciate your advising our office as to what restrictions Ms. Aviles is willing to do without. . . . Her numerous restrictions are inconsistent with a safe working environment."). Plaintiff had been working successfully and safely at BAE with the restrictions (meaning accommodations) the parties had agreed Dr. Gershon would rely on in issuing his opinion,

that it was safe for her to continue doing so. By requiring that she do without some of those restrictions or accommodations, Rapaport, acting for BAE, prevented Plaintiff from returning, permanently.

When on July 15 Plaintiff learned that Dr. Morales had said to her attorney that she was seeing so many doctors that "she could not really have been working," in response to the point that she had been doing her job adequately, Am. Compl. para. 41, it was clear that it did not matter how able she was to do her job, because the interactive process was a sham.

BAE does not and cannot claim Ms. Aviles waived her failure to accommodate claim prospectively, so that claim could not have been barred by the Release when it accrued after Ms. Aviles signed the Release. BAE's motion to dismiss the claim fails.

## POINT III

### PLAINTIFF'S RETALIATION CLAIMS, AND TITLE VII DISCRIMINATION CLAIM, ACCRUED AFTER MAY 18, 2015

Plaintiff's ADA and Title VII retaliation claims, and Title VII discrimination claim, did not accrue until after it became clear that Defendant made a final decision denying Plaintiff's request to return to work with accommodations. *See generally Guerrero v. Weeks,* 2013 U.S. Dist. LEXIS 132122, at *7, *(quoting Nasim v. Warden, Md. House of Corr.,* 64 F.3d 951, 955 (4th Cir. 1995). Under certain situations, a "request for reasonable accommodation is a protected activity capable of grounding an ADA retaliation claim." *Mercer v. Drohan Mgmt. Grp*., Inc., No. 1:10cv1212, 2011 U.S. Dist. LEXIS 136454, at *22 (E.D. Va. Nov. 28, 2011); *see also Haulbrook v. Michelin N. Am., Inc*., 252 F.3d 696, 706 (4th Cir. 2001) (noting that plaintiff's request for accommodation was a protected activity under the ADA, in which "a contested issue of fact arguably exists as to the causal connection between his accommodation request and termination, due solely to the proximity in time of his termination[.]"); *see also, Sheaffer v. Cty. of Chatham*, 337 F. Supp. 2d 709, 716-17 (M.D.N.C. 2004) (holding that defendant's final decision to uphold plaintiff's termination following her right to appeal

represented the official termination of plaintiff, which was a discrete act that fell within the limitations period even though the initial recommendation for termination did not fall within the limitations period because plaintiff's right to appeal the termination represented a stay of the termination).

Here, the Amended Complaint alleges that Dr. Gershon signed his opinion that Plaintiff "can safely perform the job listed . . . given her current medical condition and believe that this job is within her work restrictions" on April 22, 2015. Am. Compl. para. 34.

Count IV, Title VII Retaliation, Paragraph 65 alleges that "Ms. Aviles engaged in numerous instances of protected activity under Title VII, up to and including signing a Settlement Agreement on May 18, 2015, in connection with the class action lawsuit in which Ms. Aviles was a named Plaintiff, and thereafter, by advocating for her return to work."

Count II, ADA Retaliation, Paragraph 56 alleges that "Ms. Aviles engaged in protected activity by demanding to be reinstated, and attempting to carry out an interactive process, in good faith."

Count III, Title VII sex discrimination, Paragraph 62, alleges that "Defendant refused to provide the accommodations to Ms. Aviles because of her sex, and refused to allow her to return to work."

On May 21, 2015, just a few days after Ms Aviles signed the Settlement Agreement, Rappaport sent his letter requiring that she do without accommodations, or restrictions, making her return impossible. Am. Compl. para. 38.[6] On July 22, 2015, Dr. Morales, the workers' compensation doctor who had not seen or treated Plaintiff in two years released Plaintiff from his care. *Id.* at paras. 24, 42. On July 24, 2015, the doctor who actually treated Plaintiff's injuries, Dr. Gershon, again deemed Plaintiff eligible to return to work with restrictions (accommodations). *Id.* at para. 43. Nevertheless, BAE refused to allow Plaintiff to return. *Id. at* para. 44.

---

6 Also probative of pretext, is the fact that Rapaport does not identify which restrictions make it dangerous to work. He just says there are too many, just like Dr. Morales said she was seeing too many doctors to actually be working. Professionals who are aware of the fact that they are denying someone the ability to earn a living are usually more careful, if they are acting in good faith. Plainly, these questions cannot be decided in the context of the instant motion.

Ostensibly moving to dismiss for failure to state a claim, BAE is attempting to litigate the merits of Plaintiff's case, without engaging in discovery. However, a reasonable inference from these allegations is that BAE desired the settlement agreement, and therefore continued the charade that it would allow Ms. Aviles back to work, until it was signed.

These are plausible allegations, and reasonable inferences. None of Counts II, III or IV are vitiated by the Release. Those claims accrued after it became clear that despite its promise to accept Dr. Gershon's opinion, it did not matter what the evidence was, she was not going back to work. Am. Compl. para. 41 ("When counsel stated that Ms. Aviles was working until he wrote the letter stating that she could not, he responded that she was seeing so many doctors that 'she could not really have been working.'"); *see also Guerrero*, 2013 U.S. Dist. LEXIS 132122, at *7 ("[C]laims accrue when the plaintiff 'possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'").

## POINT IV

### PLAINTIFF'S AMENDED COMPLAINT STATES PLAUSIBLE CLAIMS FOR RELIEF UNDER THE ADA AND TITLE VII

At bottom, Defendant challenges the allegations in Plaintiff's Amended Complaint, claiming Ms. Aviles has not shown that it acted "because of" discriminatory or retaliatory motives. BAE is attempting to litigate the merits of Plaintiff's claims rather than challenge the pleadings. The Amended Complaint sufficiently alleges violations of the ADA and Title VII.

### A.     ADA Discrimination and Retaliation (Counts I and II)

An employer's failure to make a reasonable accommodation is a form of discrimination prohibited by the ADA. "In a failure-to-accommodate case, an employee establishes a prima facie case by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could

perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Crabill,* 423 F. App'x at 322 (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

"[A]n employee's accommodation request, even an unreasonable one, typically triggers an employer's duty to engage in an 'interactive process' to arrive at a suitable accommodation collaboratively with the employee." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 331 n.4 (4th Cir. 2014) (citations omitted). In *Moss*, the court denied a 12(b)(6) motion where plaintiff sufficiently that defendant failed to engage in the interactive process when plaintiff alleged that "[d]efendant was unwilling to engage in a meaningful process to reasonably accommodate [p]laintiff's medical conditions[ and] [d]efendant refused to permanently assign [p]laintiff to the desk position or to another work location despite having ample medical documentation from [p]laintiff's doctors and its own physician that confirmed her medical conditions and requested she be removed from the drive-thru window." *Moss v. Pasquotank Cty.*, No. 2:10-CV-56-BR, 2012 U.S. Dist. LEXIS 84491, at *17 (E.D.N.C. June 19, 2012). Where a plaintiff has "sufficiently pled a failure to accommodate claim under the ADA, . . . issues concerning the reasonableness of the requested accommodation are questions of fact that are more properly resolved at the summary judgment stage or at trial." *Feldman v. Law Enf't Assocs. Corp.*, 779 F. Supp. 2d 472, 487 (E.D.N.C. 2011).

Here, Plaintiff has alleged that she "is disabled within the meaning of the ADA[, and that] Defendant perceived or regarded Ms. Aviles as having disabilities." Am. Compl., para. 10. Plaintiff "is able to perform the essential functions of her job, with reasonable accommodations[,]" *id.* para. 11, and in fact, had been doing so "[s]ince prior to 2007." *Id.* para. 9. After taking her out of work, Plaintiff alleges that BAE failed to engage in the interactive process of assessing Plaintiff's ability to work with reasonable accommodations where Defendant stated it would accept a second opinion, but then refused to accept the opinion and at the end of the interactive process, and refused to allow her to work because

of her disability. *See generally*, *id.*, paras. 26-45.

Contrary to Defendant's assertions, the Amended Complaint also alleges facts that state a plausible claim for relief on the grounds that Defendant acted *because of* her disability, where Plaintiff's condition did not change, but BAE refused to allow Plaintiff to come back to work after it had her re-evaluated. *Id.* In fact, viewing the facts in the light most favorable to Plaintiff, as this Court must, BAE *concedes* it acted because of Ms. Aviles' disabilities, since it claims it is keeping her out of work on the basis that her disability means she cannot work safely.[7] *Id.* at paras. 38, 40, 41. What Defendant denies is that Plaintiff could be reasonably accommodated, an issue that cannot be decided at the pleading stage. *See Dickinson v. Univ. of N.C.*, 91 F. Supp. 3d 755, 769 (M.D.N.C. 2015) (denying defendant's motion to dismiss plaintiff's ADA discrimination and retaliation claims).[8]

Similarly, Defendant's "merits" based argument that Plaintiff did not include facts that suggest it acted based on anything other than a doctor's declaration that Plaintiff should not continue working once again fails to view the facts in the light most favorable to Ms. Aviles. As described above, Plaintiff alleges that Dr. Morales did not examine her prior to putting her out of work, Am. Compl. para. 21; BAE agreed to accept Dr. Gershon's second opinion, *id.* at paras. 30, 32, 33; he opined she could safely work, *id.* at para. 34; instead of accepting this opinion as agreed, BAE made new demands, *id.* at para. 35; Dr. Gershon responded to those demands, *id.* at para. 36; on May 21, BAE made new

---

7   A fact that Plaintiff disputes.

8   The *Dickinson* Court held that the plaintiff "need not plead that she was dismissed directly because of her disability[]" in order to survive a 12(b)(6) motion when plaintiff pled that defendant's "subjecting her to unreasonable" standards and a "probation agreement lacking any basis in university policy were discriminatory and ultimately led to her dismissal." *Dickinson v. Univ. of N.C.*, 91 F. Supp. 3d 755, 768 (M.D.N.C. 2015). The court held that "Defendants have offered no reason why these actions, if true, cannot count as discrimination[,] and therefore denied defendant's 12(b)(6) motion. *Id.* at 768. The court also denied defendant's 12(b)(6) motion as to plaintiff's retaliation claims, holding that plaintiff's allegations of retaliation were sufficient when plaintiff "allege[d] that she engaged in conduct protected by the ADA when she requested accommodations; that she subsequently suffered adverse action . . . ; and [that] causal links exist[ed] between all her protected conduct and the adverse actions." *Id.* at 769.

demands, *id*. at para. 38, 39; Plaintiff continued to engage in the interactive process, *id*. at para. 41; Dr. Morales, who had not treated Plaintiff in two years, finally released her from his care, *id*. at para. 42; and on July 24, 2015, Dr. Gershon submitted a Status Report that Plaintiff could return to work, but BAE refused. *Id*. at para. 43, 44. These allegations support a plausible claim for relief that BAE acted because of her request for an accommodation and/or because of other protected activity, for purposes of a Rule 12(b)(6) motion. *See Dickinson*, 91 F. Supp. 3d at 769 (M.D.N.C. 2015) (denying motion to dismiss when plaintiff "allege[d] that she engaged in conduct protected by the ADA when she requested accommodations; that she subsequently suffered adverse action . . . ; and causal links exist[ed] between all her protected conduct and the adverse actions."); *see also Valentine v. Am. Home Shield Corp.,* 939 F. Supp. 1376, 1401-02 (N.D. Iowa 1996) ("[T]he withdrawal of a reasonable offer of accommodation after it has been accepted would give rise to an inference of illicit motive. Bad faith in the interactive process necessarily suggests a desire not to accommodate an employee's disability, or, to put it another way, suggests discriminatory animus. There is consequently an inference of pretext and intentional discrimination in this case.").

Defendant's primary argument (aside from the accrual issue) is that Plaintiff cannot point to facts occurring after the Release that are consistent with the inference that Defendant acted "because of" disability or protected activity, and not some other reason. Defendant cites *Gentry v. E. W. Partners Club Mgmt. Co.,* 816 F.3d 228 (4th Cir. 2016). However, as set forth above, Plaintiff is not limited to facts that occurred after May 18.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Aviles v. BAE Sys.,* 2014 U.S. Dist. LEXIS 185300, at *10-11.

Moreover, while it is true that at *summary judgment* Plaintiff will have had to establish facts from which a jury could find Defendant acted because of retaliation, *see Gentry,* 816 F.3d at 235-236, at the *pleading stage*, Plaintiff need only allege facts that could state a plausible claim for relief. As the Fourth Circuit Court of Appeals held in *Craddock v. Lincoln Nat'l Life Ins. Co.*, the prima facie "test is

16

an evidentiary standard under the 'pretext' framework set out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and is 'not a pleading requirement.'" 533 Fed. Appx. 333, 335-336 (4th Cir. N.C. 2013) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)) (emphasis supplied).

As described above, Plaintiff has plausibly alleged facts that could support a conclusion that BAE did not act for its stated reason,[9] but for an illegal reason—either because of disability or perceived disability, because Ms. Aviles requested a reasonable accommodation, or both.[10]

### B.   Title VII Discrimination (Count III)

Defendant argues that Plaintiff must show she suffered an adverse action under circumstances that give rise to an inference of discrimination based on sex, citing *Mackey v. Shalala,* 360 F.3d 463, 468 (4th Cir. 2004). Def.'s Mem. of Law 17-18. However, like other cases Defendant cites, *Mackey* is a summary judgment decision which evaluated the claims in light of the evidence. *See generally id.*

---

9   Defendant's citations in its Memorandum at footnote 3 are inapposite to Defendant's assertion that it was entitled to rely on the medical opinion of its doctors. Def.'s Mem. of Law17, n. 3. *Davis v. Lockheed Martin Operations Support, Inc.*, was decided at summary judgment, and did not speak to whether Plaintiff had stated a plausible claim for relief. 84 F. Supp. 2d 707, 713 (D. Md. 2000). *Class v. Towson Univ.,* was an appellate review of a bench trial decision. 806 F.3d 236, 251 (4th Cir. 2015). The plaintiffs in those cases had the opportunity for discovery to gather evidence as to whether the defendants actually acted in reliance on a doctor's determination or for some other reason. In *Webb v. Med. Facilities of Am.*, the court noted that "the question of the employer's motive is 'rarely susceptible to resolution' on a pretrial motion," but granted the motion to dismiss because the plaintiff wholly failed to allege an essential element of the claim: that defendant regarded her as disabled, and in fact contradicted that assertion in her complaint. No. 7:05CV00409, 2005 WL 3547034, at *5-*6 (W.D. Va. Dec. 28, 2005). Moreover, unlike here, the court found there was no allegation "of manipulation or undue reliance upon the doctor's restrictions by the defendant." *Id.* at *9. Here, the Amended Complaint indicates that Plaintiff's former workers' compensation doctor who had not examined her, communicated with BAE's workers' compensation attorney prior to Dr. Morales' letter. Am. Compl. para. 22. Further, Plaintiff became suspicious that BAE had caused Morales to issue the letter. *Id.* at para. 23. Moreover, BAE refused to rely on a medical opinion that it authorized, that stated she could return to work. *Id.* at paras. 34-43. It would be inappropriate to accept BAE's "position" at this stage.

10  Notably, Defendant may have had more than one reason for its conduct. "[A]n employer who has mixed motives for discharging an employee may avoid liability provided one motive is legitimate, but not when both motives are unlawful." *Kerrigan v. Bd. of Educ.*, No. WDQ-14-3153, 2015 U.S. Dist. LEXIS 99426, at *24 n.22 (D. Md. July 28, 2015) (internal quotations omitted).

These summary judgment cases are inapposite to a motion to dismiss analysis. Defendant's Motion should be denied on these grounds alone.

Once again, Plaintiff's allegations support a plausible claim for relief for gender discrimination based on a violation of Title VII. Contrary to Defendant's oft-repeated assertion that Plaintiff acknowledges that BAE acted to remove her in the first instance "because her longtime treating physician" (Def.'s Mem. of Law 17 (emphasis supplied)) opined that she could not work safely; in fact, Plaintiff does not allege that BAE *actually* acted because of the medical opinion. Rather, her Amended Complaint supports a claim that BAE, through its counsel, spoke with Dr. Morales, that BAE engineered the letter, and that while ostensibly engaging in a process to put her back to work, refused to do so, despite the fact that it permitted a specific male employee (Am. Compl. paras. 46-47), with similar restrictions to continue working with accommodations; thus, treating Plaintiff differently because of her gender. While Plaintiff is not required to plead a prima facie case in her complaint, she did specifically identify a comparator who was treated better. This is far from a "speculative fact." *Cf.* Def.'s Mem. of Law 23. Plaintiff has clearly provided enough detail for Defendant to understand what Plaintiff is alleging BAE did wrong.[11]

## C.    Title VII Retaliation (Count IV)

Plaintiff has stated a plausible claim for relief for a violation of Title VII's retaliation provision. Once again BAE argues the merits of the claims, seeks to establish its motivation as a matter of law,

---

11 Defendant's citations are unhelpful, once again. In *Balazs*—decided on summary judgment—the court found that plaintiff had never claimed he was treated differently from any other employee, male or female, because of his sex. *Balazs v. Liebenthal*, 32 F.3d 151, 155 (4th Cir. 1994). Here, Plaintiff specifically alleges that BAE treated a male coworker with similar disabilities better than it treated Plaintiff by allowing him to continue working, and did so "because of" her sex. Am. Compl., paras. 46-47, 60-62. At issue in *Bracey* was a *pro se* plaintiff's failure to provide any facts at all that could support a claim or let the court or the defendant know about what conduct plaintiff was complaining. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 418 (E.D. Va. 1999). The court held that under the liberal "no set of facts" standard, plaintiff's complaint did not even allege a "very remote" chance of recovery, and therefore failed. *Id.*

and avoids analysis of when Plaintiff's claim accrued, asserting that "maintaining the status quo is not a new event giving rise to relief," citing no case law. Def.'s Mem. of Law 19.

BAE's Memorandum demonstrates why dismissal at this stage is inappropriate when it states that the fact "suggest" that BAE did not act because of protected activity. Def.'s Mem. of Law 20. What they are saying is BAE should get every favorable inference, which is the opposite of what the law requires. *See Fitzsimmons,* 2015 U.S. Dist. LEXIS 108925, at *3 ("In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.").

Whether BAE may ultimately convince a jury as to its motivations, at the pleading state, the allegations are accepted as true, and they support a claim for retaliation based on multiple instances of protected activity, including entering into the class action settlement, resulting in BAE refusing to honor its agreement to accept Dr. Gershon's medical opinion and put her back to work.[12]

Defendant, again, attempts to make out its 12(b)(6) argument against Plaintiff's Title VII retaliation claim by citing cases that were decided on the merits. In doing so, Defendant is confounding pleading standards with evidentiary standards.[13]

## POINT V

---

12 BAE's repeated assertions that Plaintiff admits the reason she was removed and kept out was because her doctor said she should not work are improper: Paragraphs. 20-21 of the Amended Complaint simply do not support BAE's assertion, and BAE repeatedly ignores that the chosen doctor (Dr. Gershon), along with another of her treating doctors (Dr. Robinson), both said she could work with reasonable accommodations. *See* Am. Compl. paras. 28, 33, 34, 43. *See also supra* Point II.

13 Defendant cites *Univ. of Tex. Sw. Med. Ctr v. Nassar*, 133 S. Ct. 2517 (2013) for the proposition that Plaintiff must allege that her protected activity was the "but for" cause of Defendant's retaliation. *See* Def. Mem. of Law19. *Nassar* was a review of an appeal of a jury decision, not a motion to dismiss. The "but for" standard set out in *Nassar* is applicable to proving a retaliation claim under Title VII. *Id.* at 2533 ("Title VII retaliation claims must be *proved* according to traditional principles of but-for causation. . . .") (emphasis supplied). *Nassar* does not set forth a pleading standard, nor does it even remotely suggest that a plaintiff is not entitled to discovery as to Defendant's motives. *Cf.* Def. Mem. of Law 19. Defendant also cites *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143 (4th Cir. 2012), but again, *Reynolds* is a summary judgment case.

**EQUITABLE TOLLING AND/OR ESTOPPEL**
**PERMIT A FINDING IN PLAINTIFF'S FAVOR, EVEN IF**
**PLAINTIFF'S CLAIM(S) ACCRUED BEFORE MAY 18, 2015**

Even if BAE proved at trial what it asking this Court to believe after reading its Memorandum —that all events giving rise to Plaintiff's claims took place before the release—equitable tolling and equitable estoppel would still permit the jury to find in her favor:

> In the employment discrimination context, equitable tolling is appropriate when the employer has wrongly misled the employee, and the employee reasonably relied on this misrepresentation by neglecting to file a timely charge. By contrast, equitable estoppel does not necessarily require that the employer actually intend to deceive the employee; rather, it is sufficient that the employer "should unmistakably have understood [that its actions] would cause the employee to delay filing his charge." *See, e.g.*, Talbot v. Mobil Corp., 46 F.Supp.2d 468, 472-73 (E.D. Va. 1999).

*Connolly v. Mills Corp.*, 430 F. Supp. 2d 553, 561 n.10 (E.D. Va. 2006) (denying defendant's 12(b)(6) motion).

A limitations period represents the point in which "the prospect of litigation should presumptively be laid to rest." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1048-49 (4th Cir. 1987). Here, the Release has an identical effect on Plaintiff's claims as would a limitations period. Defendant stands to gain an identical unjust benefit by acting in bad faith to lull the Plaintiff into signing the Release as it would if this were a limitations period issue and Defendant had instead lulled Plaintiff into not filing a timely claim.

In the Fourth Circuit, "a plaintiff need not demonstrate actual fraud or deception by a defendant to invoke equitable estoppel. *Id.* at 898; *see also United States ex rel. J. Bobby Currin & Sons v. J & W Builders, Inc.*, 17 F. Supp. 2d 462, 465 (D. Md. 1996). In an age discrimination case, the court applied equitable estoppel to defendant's 12(b)(6) statute of limitations defense when defendant "should unmistakably have understood [its actions] would cause the [plaintiff] to delay filing his charge." *Connolly*, 430 F. Supp. 2d at 561. Defendant moved to dismiss plaintiff's unlawful termination claim,

arguing that it was time-barred because defendant had given plaintiff notice of its intent to terminate his employment on three separate occasions that were each sufficient to trigger the limitations period, and plaintiff's filing was untimely under each of the triggering events. *Id.* at 557. The court held that even if defendant had terminated plaintiff at the earliest alleged date, defendant's "conflicting messages" about plaintiff's future at defendant "reasonably lulled [plaintiff] into believing that he was not going to be terminated, or at least that any termination notices he received were no longer either final or unequivocal." *Id. at* 562.

Defendant continued to employ plaintiff for nearly three years after its first notice of termination to plaintiff. *Id*. Plaintiff continued to receive salary, benefits, raises, bonuses. Defendant ignored plaintiff's attempts to finalize a termination agreement, and instead reassured plaintiff of the the flexibility of the termination dates and made statements about the continued duration of plaintiff's employment. *Id*. The court held that defendant "should have understood [its conduct], taken together, would cause [plaintiff] to conclude that [defendant] had reversed its earlier decision to terminate him, or was, at least, reconsidering or ambivalent about it." *Id.* ("This is precisely the sort of disingenuous or careless employer conduct that equitable estoppel is designed to prevent."). "[A]n employer should not be entitled to give [an] employee notice of termination and then structure the termination in such a way that effectively forces the employee to relinquish his claim of discrimination by providing the employee . . . with a strong incentive to delay filing the claim." *Id.* at 560.

Like *Connolly*, the Amended Complaint alleges facts that support the application of equitable estoppel on Defendant's 12(b)(6) Motion. Ms. Aviles alleges that after BAE initially placed her out of work it agreed to act in good faith and agreed to accept the opinion of a "second opinion," Am. Compl, paras. 26-30, which it understood that she would rely on, *id*. at para. 31, but that BAE then refused to accept that second opinion, and refused to put her back to work. *Id*. a t paras. 33-44. These facts plausibly support a finding of equitable estoppel, because Defendant's actions caused Plaintiff to wait

to take legal action; thus, to the extent that Plaintiff's has any claims that accrued prior to the Release, Defendant's misleading, or more charitably, reckless conduct, supports the Court in exercising its equitable powers to estop Defendant's raising the Release as an affirmative defense. Further, Plaintiff is entitled to discovery relating to the facts supporting equitable estoppel.

Similarly, the Amended Complaint supports equitable tolling, which applies when a complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Crabill*, 423 F. App'x at 321 (*citing Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The application of equitable tolling turns on whether "it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Crabill*, 423 F. App'x at 321 (citing *Harris*, 209 F.3d at 330). A district court's decision to apply equitable tolling is reviewed for abuse of discretion. *Crabill*, 423 F. App'x at 321.

"To invoke equitable tolling under Title VII, a plaintiff must establish two facts: (1) that the defendant attempted to mislead her; and (2) that the plaintiff reasonably relied on the misrepresentation by neglecting to timely initiate her claim." *D'Antonio v. Napolitano*, Civil Action No. 1:11-cv-1295 (AJT/TRJ), 2012 U.S. Dist. LEXIS 63328, at *21 (E.D. Va. May 4, 2012).

Here, the Amended Complaint alleges facts that could support the application of equitable tolling: Ms. Aviles alleges that after BAE initially placed her out of work it agreed to act in good faith and agreed to accept the opinion of a "second opinion," Am. Compl. paras. 26-30, on which she reasonably relied, *id*. a t para. 31, but that BAE then refused to accept that second opinion, demonstrating it had not been acting in good faith, and refused to put her back to work. *Id.* at paras. 33-44. These facts plausibly support a finding of equitable tolling to the extent that Plaintiff's claims all accrued prior to the release. *Weick v. O'Keefe*, 26 F.3d 467, 470-71 (4th Cir. 1994) (reversing summary judgment and holding that plaintiff's claims were equitably tolled where defendant lied to plaintiff

regarding the facts that gave rise to her claims). Even if the Court does not exercise its equitable power at this stage, Plaintiff is entitled to discovery relating to the facts supporting equitable tolling.

Defendant suggests, in what amounts to a closing argument, that Plaintiff's claims accrued prior to the signing of the Release. Giving Plaintiff all plausible inferences, the Amended Complaint alleges that BAE intentionally deceived Plaintiff into believing it would take her back if she could prove she could work with her accommodations, strung her along until the Release was signed, and then made it clear she was never working again. If BAE had honored its agreement, Ms. Aviles would be back at work. However, the Amended Complaint alleges that Defendant engaged in misleading conduct— pretending that it would allow her back to work if she satisfied the conditions of its understanding with her—that caused her unknowingly to, in effect, abandon her claims. This is the exact misconduct the doctrines of equitable tolling and equitable estoppel are intended to rectify.

Consequently these equitable doctrines prevent BAE from holding up the Release as a bar to Plaintiff's claims.

<b>POINT VI</b>

<b>PLAINTIFF'S CLAIMS ARE NOT BARRED BY WORKERS' COMPENSATION EXCLUSIVITY RULES BECAUSE PLAINTIFF ALLEGES THAT BAE ACTED BECAUSE OF DISCRIMIONATION AND RETALIATION, NOT BECAUSE OF 'DOCTOR'S ORDERS'</b>

Plaintiff's claims arise from the injury caused to Ms. Aviles by Defendant's intentional discriminatory and retaliatory conduct that prevented Plaintiff from returning to work after she was removed. Defendant does not contend that Plaintiff's claims are barred by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), merely that "to the extent that Plaintiff intends to challenge her doctor's determination that Plaintiff could not continue working," the LHWCA would be the exclusive remedy. Def.'s Mem. of Law 24. However, as explained above, Plaintiff intends to challenge *BAE's* conduct. The redress Plaintiff seeks is for *Defendant's* violation of her civil rights, and *Defendant's* decisions, which Plaintiff's claims against are not barred.

23

The Amended Complaint alleges facts that if proved would show that Defendant was not acting on "doctor's orders," but rather for unlawful reasons prohibited by Title VII and the ADA, given that BAE made the agreement to accept a second medical opinion and BAE reneged on its agreement, and instead barred Plaintiff from returning to work. Discovery will reveal the circumstances under which Dr. Morales came to provide his initial assessment, and the reasons for BAE's ultimate decision not to allow Plaintiff back to work with the reasonable accommodations with which she had worked successfully for years. This decision the Amended Complaint alleges was discriminatory and retaliatory. It is Defendant's unlawful motives and unlawful decisions on which Plaintiff predicates her claims.

Defendant argues that to the extent Plaintiff seeks to overturn Dr. Morales' workers compensation "determination," this court would lack subject matter jurisdiction. Def.'s Mem. of Law 24-25.[14] However, Plaintiff's injuries are independent of the LHWCA. Plaintiff seeks redress from the injuries she suffered as a result of Defendant's unlawful gender and disability discrimination and retaliation under Title VII and the ADA. These injuries are not the result of a condition or obligation of Plaintiff's employment at Defendant, *see Jones v. Halliburton Co*., 791 F. Supp. 2d 567, 583 (S.D. Tex. 2011) (holding that to arise out of or in the course of employment means that the injury arose out of the [workers'] obligations or conditions of employment), and are not covered by or barred by the LHWCA. *Id.* at 582 (discrimination, harassment, and wrongful discharge are not barred by exclusivity provisions of the Defense Base Act, which "extends and incorporates the provisions of the Longshore and Harbor

---

14 Defendant cites *Demetres v. E. W. Constr., Inc*.; however, *Demetres* has no applicability to the present issue. *See* 995 F. Supp. 2d 539, 543 (E.D. Va. 2014). In *Demetres*, the plaintiff was injured by a bulldozer at work, received compensation benefits under the Virginia Workers Compensation Act, and thereafter filed a negligence claim against the defendant for being injured by the bulldozer. *Id*. at 541-42. The court held that plaintiff's negligence claim was barred by the workers' compensation exclusivity provision because his work place injury made him eligible for worker's compensation, which excluded plaintiff from enforcing his rights and remedies "on account of such injury." *Id.* at 543.

Workers' Compensation Act." And, "there were no conditions or obligations in [plaintiff's] employment . . . for the sexual harassment and sexual assault she alleged suffered."); *Metz v. United States*, 723 F. Supp. 1133, 1136 (D. Md. 1989) ("Claims for discrimination, harassment, and wrongful discharge are not of the type covered either by typical workers' compensation acts."); *De Ford v. Sec'y of Labor*, 700 F.2d 281, 290 (6th Cir. 1983) ("Neither the language of the statute itself nor the policy foundations underlying workmen's compensation acts support a conclusion that intentional discrimination is to be viewed as causing an "injury" subject to FECA coverage."); *Sullivan v. United States*, 428 F. Supp. 79, 81 (E.D. Wis. 1977) ("The type of injuries covered in [the Federal Employment Compensation Act] includes injury by accident and disease; it does not appear to include such claims as are presented here for discrimination, mental distress, or loss of employment.")

## POINT VII

### PLAINTIFF'S AMENDED COMPLAINT PROVIDES SUFFICIENT DETAIL TO ALLOW DEFENDANT TO FRAME ITS RESPONSE

Plaintiff alleges her claims in sufficient detail in her Amended Complaint to provide Defendant an opportunity to frame its response. Defendant's characterization of the Amended Complaint as "devoid of factual allegations" is a spurious argument. Defendant asks for a more definite statement as a proxy for discovery. The Amended Complaint not only pleads sufficient factual details to satisfy the *Twombly* and *Iqbal* plausibility standards, Plaintiff provides so much factual detail that Defendant essentially asks the Court in its Memorandum to rule on the merits of this case without the benefit of discovery. Its argument fails.

"[A] complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim." *Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 349 (4th Cir. 2005) (holding that in a FLSA case "the complaint need not specify the names of the aggrieved employees, their wages, the weeks in which the employees were entitled to overtime pay, or the particular records

that the hospital had failed to maintain.").

A motion for a more definite statement should only be granted when a defendant cannot frame a response. *Blizzard v. Dalton*, 876 F. Supp. 95, 100 (E.D. Va. 1995). Further, "[if] detail sought by a motion for a more definite statement is obtainable through discovery, a motion for a more definite statement should be denied." *Cornett Mgmt. Co., LLC v. Lexington Ins. Co*., Civil Action No. 5:04CV22, 2006 U.S. Dist. LEXIS 97749, at *35 (N.D.W. Va. Mar. 31, 2006); *see also Frederick v. Koziol*, 727 F. Supp. 1019, 1020-21 (E.D. Va. 1990) (same).

On one hand, Defendant argues that it can not be reasonably expected to frame a response to the Amended Complaint for lack of detail, yet on the other, it submits a twenty-eight page Motion, providing its own version of almost every factual allegation, attacking the elements of the claims to which it purportedly cannot ascertain, and asserts an affirmative defense. *See Blizzard,* 876 F. Supp. at 100 ("Although Defendant complains that he cannot frame a response, Defendant has submitted a well-documented Motion to Dismiss."); *Chao*, 415 F.3d at 349 n.4 ("[A]lthough objecting to the complaint's purported vagueness, [defendant] answered the complaint and asserted affirmative defenses."). *Pugh v. EEOC*, Civil Action No. DKC 13-2862, 2014 U.S. Dist. LEXIS 88851, at *10 (D. Md. June 30, 2014) ("The fact that [defendant] has identified the traditional elements of a disparate treatment claim is itself evidence that the complaint is not unintelligible. . . .").

Yet, still, Defendant wants more detail. *Cf. Frederick v. Kozio*l, 727 F. Supp. 1019, 1021 (E.D. Va. 1990) ("The motion for more definite statement is designed to strike at unintelligibility rather than simple want of detail. . . .") (citations and internal quotations omitted). Defendant's Memorandum demonstrates Plaintiff's Amended Complaint is perfectly intelligible.

For example, Defendant argues "that BAE Systems cannot ascertain the scope of any claims not barred by the Release." Def.'s Mem. of Law 25. Yet, this statement implies that Defendant has, at least, identified those claims that it concludes are barred by the Release. Defendant does exactly what it says

26

it cannot: responds to Plaintiff's claims.

Defendant cites *Old Dominion Univ. Research Found. v. Aqua Terra Int'l*, Civil Action No. 2:14cv305, 2014 U.S. Dist. LEXIS 156642, at *10 (E.D. Va. Nov. 5, 2014) to argue that Plaintiff has not provided sufficient detail for Defendant to respond to the Amended Complaint. *Old Dominion* is a fraud case. Fraud cases are governed by Rule 9, which requires that fraud be pled with particularity. Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud. . . ."). The obvious differences between the heightened pleading requirement of Rule 9, versus the liberal pleading requirement of Rule 8, in and of itself, make *Old Dominion* inapposite the issue presented presently.

Plaintiff's Amended Complaint provides detailed allegations of Defendant's discriminatory and retaliatory conduct on which Plaintiff bases her claims, including the dates that the conduct occurred, the names of the various actors participating in the conduct, and that facts that express the elements of her claims. Therefore, Defendant can frame its response. *Chao*, 415 F.3d at 349 ("[T]he sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant to prepare a defense, but merely whether the document's allegations are detailed and informative enough to enable the defendant to respond.") (citations and internal quotations omitted). Defendant's 12(e) Motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint alleges plausible claims for relief that are not barred by the Release or the exclusivity provisions of the LHWCA, and is sufficiently detailed to allow Defendant to frame a response. Defendant's Motion should be denied.


Dated: August 19, 2016
Mamaroneck, NY 10543

Respectfully Submitted,


By: */s/James H. Shoemaker, Jr*
James H. Shoemaker, Jr.
Virginia State Bar No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4500
Fax: (757) 223-4518
jshoemaker@phwd.com
*Local Counsel for Plaintiffs*

By: _____ */s/ Joshua Friedman*_
Joshua Friedman
Rebecca Houlding
Law Offices of Joshua Friedman
1050 Seven Oaks Lane
Mamaroneck, NY 10549
Tel (212) 308-4338 x 5
Fax (866) 731-5553
josh@joshuafriedmanesq.com
rebecca@joshuafriedmanesq.com
*Admitted Pro Hac Vice*

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2016 I will electronically file the foregoing Opposition to Defendant's Motion to Dismiss or in the Alternative for a More Definite Statement with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By: */s/James H. Shoemaker, Jr*
James H. Shoemaker, Jr.
Virginia State Bar No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4500
Fax: (757) 223-4518
jshoemaker@phwd.com

*Local Counsel for Plaintiffs*